UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DCM SYSTEMS, INCORPORATED, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 14-cv-10243-IT |
| | * |
| TECHNICAL TRADES INSTITUTE, INC., | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

September 25, 2014

TALWANI, D.J.

I. Introduction

Plaintiff DCM Systems, Incorporated ("DCM") filed this action against Defendant Technical Trades Institute, Inc. d/b/a IntelliTec College ("IntelliTec"), alleging (1) copyright infringement, (2) removal of copyright management information in violation of 17 U.S.C. § 1202, (3) unfair competition under section 43(a) of the Lanham Act, and (4) tortious interference with business relations. Defendant moves to dismiss the amended complaint on four grounds, including lack of personal jurisdiction. Because the court finds that it lacks personal jurisdiction over IntelliTec as to DCM's claims, it hereby ALLOWS IntelliTec's Motion to Dismiss the First Amended Complaint [#10].

II. Facts Relating to Personal Jurisdiction

DCM alleges the following jurisdictional facts in its amended complaint.[1] DCM is a

---

[1] Because the court is considering this motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, it "is required to take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed), construing them in the light most favorable to the plaintiff; the court, however, should not credit conclusory allegations or draw farfetched

Massachusetts corporation with its principal place of business in Massachusetts. DCM is the provider of a learning system, which includes the Dean Vaughn Medical Terminology 350 Instructional Program. DCM owns the content in and copyright to the individual video lessons of this program, including fourteen video lessons in DCM's Dean Vaughn Medical Terminology 350 Second Edition program (hereinafter "the Video Lessons") that, as further explained below, were purchased by IntelliTec in 2004. DCM protects this intellectual property, in part, "by issuing individualized, numbered, Site Licenses that, by their terms, limit the use and broadcast of the video content, precluding, inter alia, exhibition to anyone other than the purchaser or the employees of the purchaser, and precluding transmission or broadcast without the express written permission of the copyright holder, DCM." First Am. Compl. ¶ 22 [#6].

Since at least as early as 1991, DCM has sold Dean Vaughn Medical Terminology products to IntelliTec, a Colorado corporation with campuses in Pueblo, Grand Junction, and Colorado Springs, Colorado, and a principal place of business in Colorado Springs, Colorado. In December 2000, IntelliTec ordered and received fourteen video lessons from DCM entitled "Dean Vaughn Medical Terminology 350 First Edition." Since that time, IntelliTec has placed "104 orders for and made 104 purchases from DCM of nearly 3,000 printed texts entitled 'Dean Vaughn Medical Terminology 350 Learning Guide,' which are used with the Dean Vaughn Medical Terminology 350 video lessons to teach the Dean Vaughn Medical Terminology 350 Instructional Program to IntelliTec students." Id. ¶ 9.

In November 2004, IntelliTec ordered two sets of the Video Lessons, which DCM shipped from Massachusetts to IntelliTec with two separately numbered Site Licenses, one for

---

inferences." Composite Co. v. Am. Int'l Grp., Inc., 988 F. Supp. 2d 61, 69 (D. Mass. 2013) (quotation marks and citation omitted). Furthermore, "[t]he court can 'add to the mix [any] facts put forward by the defendants, to the extent that they are uncontradicted.'" Id. at 70 (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)).

each of the two campuses on which the videos are allowed to be used. These orders were shipped F.O.B. Walpole, Massachusetts. In June 2013, IntelliTec posted substantially identical copies of at least eleven of these fourteen video lessons on IntelliTec's "IntelliTecVideos" channel on YouTube, making them widely available throughout the United States. Moreover, based upon information and belief, these copies have been distributed, viewed, displayed, and copied in Massachusetts.

On numerous occasions, DCM has been asked by customers and potential customers for permission to copy its materials and make those materials available—requests that DCM denied. IntelliTec's publication of the Video Lessons makes it appear that DCM has selectively changed its policies, raising objections from DCM's other customers which complain about what they perceive as favorable treatment afforded to IntelliTec. As a longstanding customer, IntelliTec knew of DCM's relationships with its other customers and potential customers and interfered with these relationships through improper motive or means.

Finally, IntelliTec operates an interactive website accessible to businesses and individuals located in Massachusetts, from which prospective students can apply for admission, schedule a campus tour, and contact a financial assistance representative. Moreover, individuals and businesses who are interested in hiring graduates of IntelliTec may use the Employer Request Form to request qualified graduates.

III. Discussion

    *A.    Personal Jurisdiction*

"An exercise of [personal] jurisdiction must be authorized by state statute and must comply with the [United States] Constitution." Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). "The court may exercise two types of personal jurisdiction—general or specific."

Bridge St. Auto., Inc. v. Green Valley Oil, LLC, 985 F. Supp. 2d 96, 109 (D. Mass. 2013). DCM does not argue that this court has general jurisdiction over IntelliTec. Opp'n Mot. Dismiss First Am. Compl. 12 n.3 [#15] (hereinafter Pl.'s Opp'n). Thus, this court must decide whether specific jurisdiction exists under Mass. Gen. Laws ch. 223A, ¶ 3—the Massachusetts long-arm statute—and the Constitution. Because the Supreme Judicial Court of Massachusetts has interpreted the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution, this court proceeds directly to the constitutional analysis. See Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011).

Due process requires that IntelliTec have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted). "The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate: (1) whether the claims arise out of or are related to the defendant's in-state activities, (2) whether the defendant has purposefully availed itself of the laws of the forum state and (3) whether the exercise of jurisdiction is reasonable under the circumstances." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., No. 13-11788, 2014 WL 815189, at *2 (D. Mass. Mar. 3, 2014) (quotation marks and citation omitted). Moreover, "[q]uestions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999). Thus, the court "must analyze the issue of personal jurisdiction with respect to each claim separately." MHA Fin. Corp. v. Varenko Invs. Ltd., 583 F. Supp. 2d 173, 178 (D. Mass. 2008).

  (1) Relatedness

"The evidence produced to support specific jurisdiction must show that the cause of

action either arises directly out of, or is related to, the defendant's forum-based contacts." Harlow, 432 F.3d at 60–61. In Harlow, the First Circuit explained that the relatedness prong "requires a showing of a material connection," and that "the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." Id. at 61 (quoting Marino v. Hyatt Corp., 793 F.2d 427, 430 (1st Cir. 1986)). Moreover, "contacts should be judged when the cause of action arose." Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 66 (1st Cir. 2002).

The court finds that most of Intellitec's forum-based contacts alleged by DCM are unrelated to any of DCM's causes of actions. First, IntelliTec's agreement to abide by the individualized Site Licenses limiting its use of the Video Lessons is, in itself, insufficient to establish a forum-based contact. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001) (explaining that "[a] contract, by itself, cannot automatically establish minimum contacts" and that Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), established a "contract-plus" analysis). Second, alleged conduct by IntelliTec that occurred outside of Massachusetts does not constitute forum-based contact even if that conduct would have a foreseeable effect in Massachusetts. Id. at 623 ("[T]he 'effects' test is a gauge for purposeful availment and is to be applied only after the relatedness prong has already been satisfied."). Lastly, IntelliTec's purchase of the Video Lessons from DCM in 2004 is not sufficiently related to any of DCM's causes of action.

The court does find one forum-based contact related to DCM's causes of action. That contact—IntelliTec's alleged distribution of the Video Lessons via YouTube to Massachusetts residents—relates to each of DCM's causes of action. IntelliTec's alleged unauthorized distribution of a copyrighted work and alleged replacement of DCM's trademark with its own

trademark is a material element to a copyright infringement claim and "reverse passing off" claim under section 43(a) of the Lanham Act, respectively.  Likewise, this alleged contact also relates to DCM's claim under 17 U.S.C. § 1202 for removal of copyright management information, which prohibits a person from distributing copyright management information knowing that the information has been removed or altered.  Lastly, this contact relates to DCM's tortious interference claim because the distribution of the Video Lessons into Massachusetts could consist of the improper means by which IntelliTec allegedly interfered with DCM's business relationship.

Accordingly, because the court finds that IntelliTec's alleged distribution of the Video Lessons via YouTube to Massachusetts residents relates to all of DCM's causes of action, the relatedness prong is satisfied.

### (2) Purposeful Availment

"The second prong of specific jurisdiction, purposeful availment, is the lynchpin of specific jurisdiction." Downer & Co., 2014 WL 815189, at *4 (quotation marks and citation omitted).  The inquiry when conducting this analysis focuses on the defendant's intentionality and is "satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Swiss Am. Bank, 274 F.3d at 623–24.  "Accordingly, the 'two cornerstones of purposeful availment' are foreseeablility and voluntariness." Downer & Co., 2014 WL 815189, at *4 (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994)).  "To determine purposeful availment, only contacts related to the Plaintiff['s] claims are considered." Alicea v. LT's Benjamin Records, 762 F. Supp. 2d 299, 309 (D. Mass. 2010).

Here, IntelliTec's only forum-based contact related to DCM's causes of action consists of

6

its alleged distribution of the Video Lessons via YouTube to Massachusetts residents. As to this contact, there is no suggestion in the amended complaint that IntelliTec intended that the Video Lessons be viewed by Massachusetts residents or that IntelliTec, by allegedly posting the infringing material, intended to advertise to, or has transacted business with, Massachusetts residents. Thus, in the absence of any suggestion that IntelliTec purposefully directed this conduct to residents in Massachusetts, IntelliTec's alleged posting of the infringing material to YouTube, which makes that material generally accessible worldwide, is not enough to establish purposeful availment. See N. Light Tech. v. N. Lights Club, 97 F. Supp. 2d 96, 106 (D. Mass. 2000) (explaining that "[t]he mere existence of a web site is not sufficient to show purposeful availment," but finding that, on the facts before it, "the [d]efendants have expressed an intention to do business in Massachusetts"); cf. Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 44–45 (D. Mass. 1997) (finding purposeful availment where (1) the defendant "purposefully directed its advertising at all the states," (2) "knowingly worked for [a Massachusetts company]" which effectively comprised 33-50% of its 1995 annual income, and (3) "advertis[ed] its work for [the Massachusetts company] on its Web site").

Moreover, the mere fact that IntelliTec's alleged infringement caused injury to a company located in Massachusetts is insufficient, by itself, to satisfy the purposeful availment prong for any of DCM's causes of action. See Sun Life Assurance Co. of Can. v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 191 (D. Mass. 2012). In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court found jurisdiction proper in a defamation suit in California where the allegedly libelous story was written and edited in Florida and published in a national magazine that circulated in California. Id. at 784, 789. The Court reasoned that because California was the focal point of both the allegedly libelous story and harm suffered, jurisdiction over the

7

petitioners was proper in California based on the effects of their extra-forum conduct. Id. at 788–89. As the First Circuit has explained, "Calder focused on the defendants' intent to cause injury in the forum by aiming their article at a forum resident and then publishing the article there, knowing that the injury would be felt in the forum." Swiss Am. Bank, 274 F.3d at 624. As explained above, however, in the instant case, DCM has not alleged facts inferring that IntelliTec had any such intent to cause injury in Massachusetts.

For these reasons, DCM has failed to establish purposeful availment for the forum-based contact related to DCM's causes of actions. This court, therefore, need not inquire whether the exercise of jurisdiction is reasonable under the circumstances because it cannot exercise specific jurisdiction as to any of DCM's causes of action in this case.

IV.     Conclusion

For the foregoing reasons, IntelliTec's Motion to Dismiss the First Amended Complaint [#10] is ALLOWED.

IT IS SO ORDERED.

Date: September 25, 2014                    /s/ Indira Talwani
                                            United States District Judge